The defendant Byrnes, with his wife, entered into an agreement of lease with Vincent Padziunas letting a vacant lot forty-nine feet nine inches by sixty-seven feet, on the southeasterly corner of Westfield avenue and El Mora avenue, in Elizabeth, for a period of ten years from October 1st, 1933. Under the terms of the lease, the tenant, at his own cost and expense, was to "erect and construct upon said demised premises, suitable office building and other structures necessary for the maintenance and operation of a plant or station for the sale of gasoline, oil and other articles usually sold in such business;" that "said building shall be wholly constructed of new material;" and "forthwith upon the execution and delivery of this lease, make application to proper municipal authorities of the city of Elizabeth for a *Page 343 
permit for the use, erection and construction of a gasoline and oil service station upon said demised premises in accordance with plans to be prepared," and to erect the building within thirty days after the permit and if the permit could not be obtained within ninety days the lease was to be at an end. The tenant was to furnish fire and indemnity insurance and was to comply with all municipal regulations and the regulations of the board of fire underwriters.
By the fifth paragraph it was stipulated:
"That the Tenant shall not assign this agreement, or underlet or underlease the premises, or any part thereof, or occupy, or permit or suffer the same to be occupied for any business or purpose deemed disreputable or extra-hazardous on account of fire, under penalty of damages and forfeiture, the consent of said Landlord shall not be, however, unreasonably withheld. Nothing in this Paragraph, however, shall be construed to prevent the sub-leasing or sub-letting of said premises by the said Tenant and the Sun Oil Company, or from one to the other, nor to prevent the transfer or assignment of this lease by the said Tenant to a corporation to be formed by him and in which corporation said Tenant shall be the majority stockholder, providing, however, that notwithstanding any such assignment, transfer, sub-leasing or sub-letting, said Tenant shall at all times be and remain liable for the payment of rentals herein reserved."
And by the eighteenth paragraph, if the tenant failed to pay his rent:
"* * * or if the tenant shall fail to comply with any other provisions or conditions of this lease on his part to be kept and performed, and such default shall continue for a period of twenty days after written notice thereof shall be given to the Tenant by the Landlord, then upon the happening of any such event, the term hereof shall, at the option of the Landlord, cease, terminate and come to an end without further notice and from thenceforth it shall and may be lawful for the Landlord to enter into and upon the demised premises and any part thereof, the same to have again, repossess and enjoy as of their former estate."
Padziunas entered into possession, obtained the permit, constructed a gas station, installed the necessary equipment and on March 13th, 1934, incorporated the complainant company, assigning to it the lease and transferring the gas station in consideration of fifty-one shares of its capital stock *Page 344 
to him, forty-eight to Paul J. Irvin and one to Elizabeth C. McGrath. The landlord was immediately notified in writing of the formation of the company and of the assignment of the lease. After the incorporation, Padziunas ran the business and paid the rent until August 14th following when he and the other stockholders transferred their stock to James Small. Since then the landlord refused to accept rent from Small for the corporation and upon two occasions brought suit against Padziunas to recover possession for non-payment of rent, the suits being dismissed upon paying the money into court. On November 15th, 1934, the landlord gave notice to Padziunas and the complainant that the terms and conditions of the lease had been violated, that upon twenty days' continuance, he elected to terminate the lease and to re-enter the demised premises, and demanded immediate possession, specifying the defaults and breaches to be: (1) That Padziunas assigned the lease to the complainant without the consent of the landlord; (2) violated municipal regulations, in that certain parts of the service station were not at a distance from the boundary line of the demised premises as required by the rules, c.; (3) the building had not been constructed wholly of new material and was not of the size, the office was not of the heighth and the greasing room was not as "great" as shown on the plans; the overhang was to be of cement tile, but is of a cheaper material (asphalt shingles); the soffit and facia of the overhang was to be of metal, it is constructed of wood; all sides of the building were to be of white stucco, instead the left and rear sides are of cement plaster; the roof was to be five-ply asphalt, it is rolled roofing; parapet ornaments with electric lights have been omitted; window sills are brick, not cement; leaders are over the line and are not painted; steel sash have no operators or catches; double hung windows have no sash cords, weights or locks and are not properly painted; steel sash and facia at rear of overhang are not painted; ceiling of the greasing room has not been plastered and that public indemnity insurance has not been furnished.
Now comes the complainant with his bill alleging the *Page 345 
defendant consented to the assignment of the lease and if there was a breach which justified a forfeiture, he waived it by accepting rent from the company and recognizing it as tenant; that the covenants as to the structure have all been complied with and the structure, as constructed, was consented to or acquiesced in by the defendant, and if there were breaches justifying forfeiture they were waived by him. The prayer is that the defendant be restrained from declaring a forfeiture, terminating the lease and from bringing action at law for the recovery of the premises. The complainant apprehends summary proceedings in the district court, but the defendant disclaims intention to adopt that course, and threatens to proceed by ejectment. The defendant asserts the breaches and denies the waivers and his argument is that this court should not interfere with his legal remedy, that it has not jurisdiction. The bill counts solely upon waiver if there were breaches of covenants justifying forfeiture. Equity has inherent jurisdiction to relieve against forfeiture for conditions broken. H. Windholz Son v. Burke, 98 N.J. Eq. 471; Lincoln Furniture Co. v.Bornstein, 100 N.J. Eq. 78; Sparks v. Lorentowicz, 106 N.J. Eq. 178.
These cases were to restrain landlord and tenants dispossess proceedings, but the jurisdiction is none the less when the action is in ejectment. The law courts have concurrent jurisdiction to defeat a waived forfeiture, and if the issue of waiver can be as conveniently tried at law as in equity, and there are no other equities, equity refrains from exercising its jurisdiction. Lincoln Furniture Co. v. Bornstein, supra.
Nothing is shown of inadequacy of the remedy at law and an injunction will be denied.
There is this perceivable equitable element as to which the remedy at law is inadequate, but it is not pleaded. Upon a trial at law of the issues of breach and waiver of the covenants that the structure was to be of "all new material" and to be built according to plans, if breaches justifying forfeiture and no waiver were found, judgment for possession would go against the complainant, whereas equity may grant relief against forfeiture upon performing the conditions. To be *Page 346 
more definite: If the structure be of some old material, or is not of the height or size specified, or remains unfinished, equity may relieve against the forfeiture upon the defects being remedied. Grigg v. Landis, 21 N.J. Eq. 494.
The complainant may amend his bill setting up his willingness to perform the covenants in respect of any shortcomings in the structure, and may renew the motion, unless the defendant gives notice that in the threatened action at law he will confine the issue to the breach of the covenant against assigning the lease without the landlord's consent. *Page 347